TRAXLER, Chief Judge,
concurring in part and dissenting in part as to Issues II and III:
I concur in the majority’s decision as to Issue II, which reverses the district court’s order striking two of the government’s witnesses as a sanction for violating the discovery order. With regard to Issue III, I concur in the reversal of the district court’s order requiring disclosure of the identities of the covert CIA agents and operatives (the “CIA witnesses”) to the jury. I respectfully dissent, however, from the majority’s decision to affirm the district court’s order requiring disclosure of this information to Sterling.
Prior to trial, the government filed a motion under Section 6 of the Classified Information Procedures Act (“CIPA”), see 18 U.S.CApp. Ill, requesting permission to substitute pseudonyms for the true names of the CIA witnesses. The government also asked that a screen be used to shield the witnesses fi"om the public’s view, but not the view of Sterling or the jury. The motions were accompanied by CIA and FBI declarations explaining in detail that public disclosure would jeopardize the *518 personal safety of the witnesses, their families, and associates, and would jeopardize the effectiveness of the CIA witnesses as agents and operatives. Additionally, foreign intelligence and terrorist organizations have a significant interest in identifying CIA agents and operatives, and use information gleaned from trials to expose their activities, sources, and methods.
The district ruled that the CIA witnesses would be allowed to testify using pseudonyms and from behind a screen, but that their true identities would have to be disclosed to Sterling and the jury. The majority reverses the district court’s ruling as to the jury, but affirms as to Sterling. Because disclosure of the identities of the CIA witnesses endangers the personal safety of the witnesses and others associated with them, and jeopardizes the witnesses’ effectiveness as agents and operatives, and there has been no demonstration that Sterling cannot effectively cross-examine the witnesses without this information, I would reverse the disclosure ruling as to both the jury and Sterling.
A.
As a general rule, “the Confrontation Clause guarantees a defendant the right to question an adverse witness about identifying information, including his full name and address.” United States v. Ramos-Cruz, 667 F.3d 487, 500 (4th Cir.2012) (citing Smith v. Illinois, 390 U.S. 129, 131, 88 S.Ct. 748, 19 L.Ed.2d 956 (1968)). However, “th[e] right is not absolute,” and “a trial court may limit cross-examination if the information sought could endanger the witness.” Id. (internal quotation marks omitted). “When the government seeks to withhold a witness’s true name, address, or place of employment, it bears the burden of demonstrating that the threat to the witness is actual and not a result of conjecture.” Id. (internal quotation marks and alteration omitted). Once the government meets this burden, the court must “review relevant information and determine whether disclosure of the witness’s identifying information is necessary to allow effective cross-examination.”
There is “no governmental interest ... more compelling than the security of the Nation,” and “[m]easures to protect the secrecy of our Government’s foreign intelligence operations plainly serve these interests.” Haig v. Agee, 453 U.S. 280, 307, 101 S.Ct. 2766, 69 L.Ed.2d 640 (1981); see also Snepp v. United States, 444 U.S. 507, 509 n. 3, 100 S.Ct. 763, 62 L.Ed.2d 704 (1980). “[T]he Government must tender as absolute an assurance of confidentiality as it possibly can” to intelligence officers and sources, C.I.A. v. Sims, 471 U.S. 159, 175, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985), and courts should exercise particular caution before “ordering] [their] identities] revealed,” id. at 176, 105 S.Ct. 1881. Protecting the classified identities of covert CIA agents and operatives is of particular concern because disclosure places not only our national security at risk, but also the personal safety of those who have committed their lives to the service of our country. Indeed, Congress has criminalized such disclosure, see 50 U.S.C. § 421, given the “behavior’s ‘intolerable’ consequences: ‘[t]he loss of vital human intelligence which our policymakers need, the great cost to the American taxpayer of replacing intelligence resources lost due to such disclosures, and the greatly increased risk of harm which continuing disclosures force intelligence officers and sources to endure.’ ” In re Grand Jury Subpoena, Judith Miller, 438 F.3d 1141, 1179 (D.C.Cir. 2006) (Tatel, J., concurring) (quoting S.Rep. No. 97-201, at 10-11 (1981)); see also 50 U.S.C. § 403g (noting that “the interests of the security of the foreign intelligence activities of the United States” *519 require that the names of CIA personnel be protected).
The actual threat to CIA witnesses has been well documented in this case, and it appears that we all agree on this point. As the majority notes: “To disclose the identities of CIA operatives, even if not to every spectator in the courtroom, subjects the operatives to targeting by hostile foreign intelligence services and terrorist organizations, and creates a grave danger to the operatives, their families, and the operations in which they are engaged.” Majority op. at 75. Accordingly, we unanimously conclude that the district court abused its discretion in requiring disclosure of the identifying information to the jury.
I depart from the majority’s view, however, that disclosure to Sterling is nevertheless required because there has been no showing that Sterling poses an actual threat to the safety of the witnesses. “[T]he appropriateness of using pseudonyms to protect witnesses does not depend on whether the threat to the witness comes directly from a defendant or from another source.” Ramos-Cruz, 667 F.3d at 501 (internal quotation marks omitted). But, in any event, the grand jury in this case has found probable cause to believe that Sterling has already revealed classified information about a covert operation and a covert CIA asset for publication in the public domain. In my opinion, no more needs to be shown to demonstrate that disclosure of the true identities of the CIA witnesses to Sterling poses an actual and specific risk, sufficient to require serious inquiry into the necessity of the disclosure for purposes of confrontation.
Because the government seeks to protect the confidentiality of the CIA witnesses’ identities to minimize the actual threat disclosure poses to them, Sterling was required to demonstrate that disclosure is necessary to conduct an effective cross-examination. See id. at 500; see also United States v. El-Mezain, 664 F.3d 467, 492, 493 (5th Cir.2011) (holding that the defendants’ Confrontation Clause rights were not violated by allowing Israeli security officers to testify using pseudonyms, due to the “serious and clear need to protect the true identities of [the witnesses] because of concerns for their safety” and the defendants’ adequate opportunity “to conduct ' effective cross-examination”); United States v. Lonetree, 35 M.J. 396, 410 (C.M.A.1992) (rejecting argument that Confrontation Clause was violated by allowing a United States intelligence agent to testify without disclosing his true name because it endangered the agent and “was not essential to a fair resolution of the cause”).
I have much respect for the district court, which has dealt with difficult questions arising from the classified nature of this case. On this particular point, however, I am constrained to find an abuse of discretion. Given the dangers involved, the district court should have granted the government’s motion to withhold disclosure of the witnesses’ identifying information because there had been no showing that the disclosure was “necessary to allow effective cross-examination.” Ramos-Cruz, 667 F.3d at 500. Instead, the district court merely ruled that the identities of the CIA witnesses should be revealed because “the defendant may know things about [a] witness,” and could “turn to counsel and say: Hey, ask him about such- and-such on cross-examination.” J.C.A. at 487. The majority similarly concludes only that failure to disclose the identifying information might “depriv[e] [Sterling] of the ability to build his defense” and, “in this regard could impinge on his Confrontation Clause rights.” Majority op. at 516-17. In my opinion, this is too speculative a basis upon which to require disclosure of the identities of the CIA witnesses to Sterling.
*520 ' Sterling has been provided with discovery on all of the witnesses by their pseudonyms, including prior statements, interview reports, cables, and other documents. Sterling therefore appears to already know the factual connection that each witness has to his case. See Ramos-Cruz, 667 F.3d at 501 (noting that “because the government disclosed to the defense details of the[ ] witnesses before the trial, the defendants were able to effectively cross-examine the witnesses without threatening their safety” (internal quotations marks omitted)). Because disclosure of the identities of the covert CIA witnesses endangers their safety, and Sterling has not made the required demonstration that he needs this information in order to conduct a meaningful cross-examination of the witnesses, I would reverse the district court’s order requiring disclosure of the identities of the CIA witnesses to Sterling as well.